UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT FREEMAN and JUDY FREEMAN, WALTER HANSEL WINERY, INC., MEYER FRIEDMAN and BEVERLY FRIEDMAN,<br><br>Plaintiffs,<br><br>v.<br><br>JERRY FISCHER, Director of the New Jersey Division of Alcoholic Beverage Control,<br><br>Defendant,<br><br>and<br><br>R&R MARKETING, LLC, ALLIED BEVERAGE GROUP, LLC and FEDWAY ASSOCIATES, INC.,<br><br>Intervenor-Defendants. | Civ. Action No. 03-3140 (KSH)<br><br><br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION**

This case finds the plaintiffs, four New Jersey residents and a California winery, challenging the constitutionality of New Jersey's statutory scheme governing the distribution and sale of wine. They contend that New Jersey impermissibly burdens interstate commerce, in violation of the dormant commerce clause doctrine, by mandating preferential treatment for in-state wineries in its licensing structure.

**II. BACKGROUND**

Plaintiffs place particular emphasis on what they characterize as New Jersey's discriminatory treatment of out-of-state wineries with respect to direct shipping, which are

1

purchases that are shipped directly to the consumer through a common carrier. Plaintiffs Robert Freeman and Judy Freeman ("the Freemans") are residents of Morris County, New Jersey, and wish to purchase "fine and rare" wines using direct shipping from out-of-state wineries. (Third Am. Compl. ¶¶ 5-9.) Plaintiffs Meyer Friedman and Beverly Friedman ("the Friedmans") are residents of Bergen County, New Jersey, and "would like to be able to obtain kosher wines which are not available in New Jersey, but are available only by direct shipment from out-of-state wineries." (Third Am. Compl. ¶¶ 5 and 29.) Plaintiffs further explain that some wineries, including Williams Selyem, Alban Vineyards, Morgan Winery, and Dunn Vineyards, only sell their products by direct shipping. (Third Am. Compl. ¶ 30.) Plaintiff Walter Hansel Winery ("Hansel") is located in Santa Rosa, Sonoma County, California, and holds state and federal permits to manufacture and sell wine. (Third Am. Compl. ¶ 10.)

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of the New Jersey Alcoholic Beverage Control Act, N.J.S.A. § 33:1-1, *et seq*. The Court administratively terminated the matter subject to the parties' right to move to reopen the proceedings, because the Supreme Court had granted certiorari in Granholm v. Heald, 541 U.S. 1062 (2004), to address whether a state licensing scheme that allows intrastate direct shipping but not interstate direct shipping violates the dormant commerce clause. Anticipating the outcome in Granholm, the State of New Jersey enacted legislation that rescinded the authority of New Jersey's in-state wineries to ship directly to New Jersey consumers. See P.L. 2004, c. 102 (July 14, 2004).

The Supreme Court ultimately determined that the type of licensing schemes at issue in Granholm are not authorized by the Twenty-first Amendment, as the state defendants had urged, and thus violate the dormant commerce clause. Granholm v. Heald, 544 U.S. 460 (2005).

Plaintiffs then, with the Court's permission, submitted a letter requesting that the Court reopen the case and grant them permission to file a dispositive motion. The Director of the New Jersey Division of Alcoholic Beverage Control, defendant Jerry Fischer ("Fischer"), filed an objection to reopening the case. The Court ultimately ordered the case reopened, granted plaintiffs the permission to file a dispositive motion, and granted the motions to intervene filed by three of New Jersey's licensed wholesalers, Fedway Associates, Allied Beverage Group and R&R Marketing, LLC. Plaintiffs filed a motion for judgment on the pleadings, while the defendants cross-moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the amended complaint for failure to state a claim upon which relief can be granted. The Court denied these motions as premature, based on its determination that the matter required a developed record.

Plaintiffs then moved to amend their complaint to remove Hansel and substitute another new winery as a plaintiff. Magistrate Judge Patty Shwartz, after finding that good cause did not exist to amend the deadlines set in the Pretrial Scheduling Order, denied the motion to amend. Plaintiffs then moved for summary judgment, and defendants filed their cross-motions for summary judgment. This opinion addresses those summary judgment motions.

**III. DISCUSSION**

    **A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) authorizes a court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

    **B. Standing**

Defendants contend that as a threshold matter plaintiffs lack standing to bring this suit. The case or controversy clause limits federal court jurisdiction to cases where the party bringing the action has established that s/he has standing, which requires a showing of injury in fact, causation, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

As to the winery plaintiff Hansel, defendants make several arguments: (1) that Hansel has expressed that it has no personal stake in the action (Intervenor Defs.'s Br. and Opp'n Summ. J. 15-16); (2) that Hansel cannot establish an injury in fact because its business plan depends on wholesalers, not direct shipping, and it has no trouble obtaining distribution throughout New Jersey (Def.'s Br. and Opp'n Summ. J. 23); and (3) that Hansel cannot establish causation because it already cannot meet consumer demand (Pls.'s Opp'n and Reply Br. Summ. J. 4). Because the consumer plaintiffs have established standing, defendants' arguments as to the standing of the winery plaintiff Hansel to bring this challenge are of no consequence. The consumer plaintiffs satisfy the standing requirements and are entitled to invoke the jurisdiction of this Court.

In Bridenbaugh v. Freeman-Wilson, 227 F.3d 848 (7th Cir. 2000), the Seventh Circuit addressed whether a wine consumer could mount a constitutional challenge to a statute that regulates sellers, not consumers. Judge Easterbrook, in discussing the injury in fact requirement, explained:

> Some of the wines plaintiffs want to drink are not carried by Indiana resellers. That establishes injury in fact. Anyone who has held a bottle of Grange Hermitage in one hand and a broken corkscrew in the other knows this to be a palpable injury….Plaintiffs need not be the immediate target of a statute to challenge it. Plaintiffs' claim, moreover, is direct rather than derivative: every interstate sale has two parties, and entitlement to transact in alcoholic beverages across state lines is as much a constitutional right of consumers as it is of shippers -- if it is a constitutional right at all.

Bridenbaugh, 227 F.3d at 849-50 (citing Allen v. Wright, 468 U.S. 737, 758, (1984); Lujan, 504 U.S. at 562)). Here, the consumer plaintiffs ask the Court to examine statutes that they contend bar out-of-state wineries from gaining access to the New Jersey market on equal footing with in-state wineries, whether by direct shipping, through retail sales, or with on-premises sales. Their claimed injury, like the plaintiffs in Bridenbaugh, is the unavailability of wines they wish to purchase: "The Friedmans seek to purchase Kosher wines from Robert Cohen, Recanti, Gan Eden, Rashi, Kesser, Weinstock, and Segal and the State's own evidence shows that only 3 of those 7 producers have New Jersey retail distribution." (Pls.'s Opp'n and Reply Br. Summ. J. 6.) Because discriminatory statutory barriers injure wineries and consumers, the injury in fact requirement can be satisfied, as it is here, by a consumer plaintiff.

  Defendants argue that the consumer plaintiffs lack standing because the Friedmans are related to plaintiffs' counsel and the Freemans were recruited to join this litigation at a high school reunion. (Def.'s Br. and Opp'n Summ. J. 23.) Defendants cite no authority for this assertion, and the Court finds their contentions unpersuasive standing alone. Defendants also assert that plaintiffs do not satisfy the causation requirement, because any unavailability of out-of-state wines is due to geography and market conditions, not the ban on direct shipping. This line of reasoning focuses too intently on the direct shipping challenge. Plaintiffs challenge other sections of the Act that they claim facially discriminate against out-of-state wineries and limit the availability of some wines they seek to purchase. If the statutory scheme facially discriminates against out-of-state wineries, the natural effect of the discrimination is to deter some wineries from participating in the New Jersey market based solely on the discriminatory effects of the statutory scheme. Plaintiffs are then denied the opportunity to obtain the wines they desire, the injury they complain of, and this satisfies the causation requirement.

5

Defendants also argue that the redressability element is not satisfied here because the changes to the statutory scheme made by the New Jersey legislature in 2004 addressed plaintiffs' constitutional challenge to the direct shipping provisions. (Def.'s Br. and Opp'n Summ. J. 22.) This argument also fails to address the other features of the statutory scheme that plaintiffs challenge. While plaintiffs do allocate significant real estate in their briefs to the issue of direct shipping to consumers, they also point to, among other things, the difference in treatment with respect to salesrooms and the fee schedule for licenses. Any discriminatory barrier to market equality violates the dormant commerce clause. The Court is being called upon in this matter to examine more than just the direct shipping provisions, and thus this argument fails. The consumer plaintiffs satisfy the standing requirement and are entitled to invoke this Court's jurisdiction.

### C. The New Jersey Alcoholic Beverage Control Act

State laws violate the commerce clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Systems, Inc. v. Dep't of Environmental Quality of Ore., 511 U.S. 93, 99 (1994). The constitutional basis of dormant commerce clause jurisprudence is the "inference that the grant of power to Congress in Art. I § 8 cl. 3 implies a limitation on state authority over the same subject." Bridenbaugh, 227 F.3d at 849. And so "[w]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, [it is] generally struck down…without further inquiry." Brown-Forman Distillers Corp. v. NY State Liquor Auth., 476 U.S. 573, 579 (1986). But "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden

6

imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). And thus the guiding concern here is whether New Jersey's statutory scheme deprives wineries "of their right to have access to the markets of other States on equal terms." Granholm, 544 U.S. at 473.

Plaintiffs identify five features of New Jersey's statutory scheme that they contend violate the dormant commerce clause. They argue that New Jersey's licensing structure severely disadvantages out-of-state wineries like Hansel because only in-state wineries may: (1) sell wine directly to New Jersey consumers without involving a separate wholesaler; (2) open multiple salesrooms in the state; (3) sell wine directly to restaurants and other retailers without either using a wholesaler or becoming a wholesaler themselves; (4) sell more than a gallon of wine to consumers visiting the winery without the consumers having to obtain a permit; and (5) ship wine directly to consumers. (Pls.'s Opp'n and Reply Br. Summ. J. 9-10.)

The Court concludes, for the reasons more fully set forth below, that some of the licensing scheme's features violate the dormant commerce clause, while others do not. As to plaintiff's first contention, that only in-state wineries may sell directly to New Jersey consumers without involving a separate wholesaler, the statute *does* authorize out-of-state wineries to sell directly to New Jersey consumers at retail and therefore this aspect of the licensing structure does not offend the dormant commerce clause. The licensing fees outlined in these sections of the statute, however, are constitutionally infirm because out-of-state wineries are required to pay fees at twice the rate charged to in-state wineries without administrative justification. Because the effect of the salesrooms provisions is to deny out-of-state wineries equal access to the New Jersey market by allowing in-state wineries to open seven total retail locations while only allowing out-of-state wineries to establish two retail locations, the salesrooms provisions also

violate the dormant commerce clause. And as to the provisions that authorize direct sales to restaurants and other retailers, the licensing scheme confers the same rights and privileges to in-state and out-of-state wineries to sell and distribute to retailers without the use of a wholesaler and thus passes constitutional muster. The provisions dealing with on-premises sales to consumers, because these sections discriminate to advance a legitimate local purpose, also pass constitutional muster. Finally, the direct shipping challenge was rendered hollow by the 2004 repeal of the statutes authorizing in-state direct shipping to consumers. The current statutory scheme, which does not authorize in-state or out-of-state wineries to direct ship to consumers, is not discriminatory and does not violate the dormant commerce clause.

    **1.  Direct Retail Sales to New Jersey Consumers**

As to their first contention, plaintiffs cite N.J.S.A. §§ 33:1-10(2a) and (2b) and N.J.S.A. § 33:1-2(a) as the relevant sections of the Act. These statutes provide in relevant part:

> Plenary winery license. 2a. Provided that the holder is engaged in growing and cultivating grapes or fruit used in the production of wine on at least three acres on, or adjacent to, the winery premises, the holder of this license shall be entitled, subject to rules and regulations, to produce any fermented wines, and to blend, fortify and treat wines, and to sell and distribute his products to wholesalers and retailers licensed in accordance with this chapter and to churches for religious purposes, and to sell and distribute without this State to any persons pursuant to the laws of the places of such sale and distribution, and to maintain a warehouse, and to sell his products at retail to consumers on the licensed premises of the winery for consumption on or off the premises and to offer samples for sampling purposes only. The fee for this license shall be $ 938.

> Farm winery license. 2b. The holder of this license shall be entitled, subject to rules and regulations, to manufacture any fermented wines and fruit juices in a quantity to be expressed in said license, dependent upon the following fees and not in excess of 50,000 gallons per year and to sell and distribute his products to wholesalers and retailers licensed in accordance with this chapter and to churches for religious purposes and to sell and distribute without this State to any persons pursuant to the laws of the places of such sale and distribution, and to maintain a warehouse and to sell at retail to consumers for consumption on or off the licensed premises and to offer samples for sampling purposes only.

8

N.J.S.A. § 33:1-10.

> It shall be unlawful to manufacture, sell, possess with intent to sell, transport, warehouse, rectify, blend, treat, fortify, mix, process, bottle or distribute alcoholic beverages in this State, except pursuant to and within the terms of a license, or as otherwise expressly authorized, under this chapter; but any drink actually intended for immediate personal use may be mixed by any person.

N.J.S.A. § 33:1-2(a). Plaintiffs argue that these provisions taken together authorize in-state wineries to sell wine directly to New Jersey consumers without involving a separate wholesaler, while out-of-state wineries must route their products through a wholesaler. This reading, however, arbitrarily isolates these provisions, failing to take into account the scope of privileges granted to out-of-state wineries by other sections of the Act.

Section 33:1-2(a) provides that the sale of alcohol in New Jersey must be pursuant to a duly-executed license within the confines of the state's three-tier system, which issues separate licenses for producers, retailers, and wholesalers. And while plaintiffs correctly read N.J.S.A. §§ 33:1-10 (2a) and (2b) as allowing New Jersey wineries to sell their products directly to consumers at retail on the licensed premises of the winery or at a salesroom location, they fail to appreciate that N.J.S.A. §§ 33:1-11 (2a) and (2b) allows out-of-state wineries to set up a retail location by which they may sell directly to consumers without involving a separate wholesaler or a retailer.

> Limited wholesale license. 2a. The holder of this license shall be entitled, subject to rules and regulations, to sell and distribute brewed malt alcoholic beverages and naturally fermented wines to retailers and wholesalers licensed in accordance with this chapter, and to sell and distribute without this State to any persons pursuant to the laws of the places of such sale and distribution, and to maintain a warehouse and salesroom. The fee for this license shall be $ 1,875.

> Wine wholesale license. 2b. The holder of this license shall be entitled, subject to rules and regulations, to sell and distribute any naturally fermented, treated, blended, fortified and sparkling wines to retailers and wholesalers licensed in accordance with this chapter, and to sell and distribute without this State to any persons pursuant to the laws of the places of such sale and distribution, and to

9

> maintain a warehouse and salesroom; provided, however, that the delivery of such wines by the holder of this license to retailers licensed under this Title shall be from inventory in a warehouse located in New Jersey which is operated under a wine wholesale license. The fee for this license shall be $ 3,750.

N.J.S.A. § 33:1-11. With a limited wholesale license, an out-of-state winery can maintain an in-state salesroom where it may sell directly to consumers. Because the statutory scheme requires both New Jersey and out-of-state wineries to maintain a physical retail location in order to sell wine directly to consumers, this particular feature of the licensing structure does not favor in-state economic interests over out-of-state interests. Out-of-state wineries may also bypass the use of a wholesaler by distributing their wines directly to retailers.

Although out-of-state wineries can obtain the right to sell directly to New Jersey consumers without routing their products through an in-state wholesaler, New Jersey's statutory scheme veers off the constitutional straight and narrow with its unexplained, and considerable, difference in licensing fees. A limited wholesale license, the type an out-of-state winery would need to make direct sales at the retail level, provides essentially the same entitlements as a plenary winery license but costs twice as much as its in-state analogue: $1,875 versus $938. Plaintiffs argue that this makes a limited wholesale license cost-prohibitive, especially for smaller wineries. Defendants argue that the fee provisions should be upheld because several wineries can share the cost of a license. But that practical consideration does not address the statute's discrimination on its face, as there appears to be no legitimate reason, and defendants offer none, for the different licensing fees other than the desire to favor in-state economic interests over out-of-state interests.

And while defendants may be correct that "New Jersey [is not] constitutionally obliged to waive its $1875 fee …to accommodate out-of-State wineries…no more than [it] must waive its licensing fees in other regulated industries such as hazardous waste processing" (Intervenor

Def.'s Br. and Opp'n Summ. J. 9), it *is* constitutionally barred from establishing a fee schedule that facially discriminates against out-of-state entities without any justification. The Act requires out-of-state wineries to pay twice the fees paid by in-state wineries for essentially the same privileges, but defendants posit no evidence that these fee amounts were calculated based on increased costs of regulating out-of-state wineries or some other legitimate state service rendered to out-of-state wineries and not in-state wineries. The Supreme Court of New Jersey as recently as 2004 struck down registration fees for hazardous waste transporters as constitutionally infirm because the effect of the fee structure was to charge out-of-state transporters twice what in-state transporters paid without any administrative justification. Am. Trucking Ass'ns v. State, 180 N.J. 377 (2004). Here, the fee for a limited wholesale license is double the fee for a plenary winery license. And without some justification for the differential, the fee schedule for licenses under the New Jersey Alcoholic Beverage Control Act, N.J.S.A. 33:1-1, *et seq.*, is as arbitrary, and as unconstitutional, as the registration fees invalidated by the Supreme Court of New Jersey in American Trucking Associations, because "its effect is to favor in-state economic interests over out-of-state interests." Brown-Forman Distillers Corp., 476 U.S. at 579.

  2. **Salesrooms**

New Jersey's statutory scheme authorizes an in-state winery to open "six salesrooms apart from the winery premises for consumption on or off the premises and for sampling purposes for consumption on the premises, at a fee of $ 250 for each salesroom," N.J.S.A. § 33:1-10(2a), while limiting out-of-state wineries to a warehouse and salesroom, N.J.S.A. § 33:1-11(2a). The statute discriminates against out-of-state wineries on its face, giving rise to a strong presumption of invalidity. "State laws that discriminate against interstate commerce face a virtually per se rule of invalidity." Granholm, 544 U.S. at 476 (2005) (quoting Philadelphia v.

New Jersey, 437 U.S. 617, 624 (1978)). The constitutional infirmity of the provision is further underscored by its effect, in that the discrimination favors in-state economic interests over out-of-state interests. The ability to open up retail locations in a given market, whereby a winery can directly control the presentation and marketing of its product, provides a winery with an advantage. The defendants do not identify a reason, administrative or otherwise, for the difference in privileges for out-of-state wineries. The discriminatory treatment of out-of-state winery salesrooms does not further the interests of preventing illegal activity, such as underage drinking or tax evasion – the effect of these provisions is simply to deprive wineries "of their right to have access to the markets of other States on equal terms." Granholm, 544 U.S. at 473. The Act arbitrarily gives in-state wineries more access, using a license that costs half of what an out-of-state winery must obtain, to New Jersey's market in violation of the dormant commerce clause.

### 3. Direct Sales to Restaurants and Other Retailers

Plaintiffs assert that the Act authorizes in-state wineries to make direct sales to restaurants and other retailers without wholesalers, while requiring an out-of-state winery to route its products through a New Jersey wholesaler or to open a New Jersey wholesaling business themselves in order to sell wine directly to restaurants and other retailers. (Pls.'s Opp'n and Reply Br. Summ. J. 9-10). Plaintiffs point to N.J.S.A. § 33:1-10(2a), which authorizes an in-state winery "to sell and distribute brewed malt alcoholic beverages and naturally fermented wines to retailers and wholesalers," as supporting this contention, as well as N.J.S.A. § 33:1-10(2b), which authorizes an in-state winery "to sell and distribute any naturally fermented, treated, blended, fortified and sparkling wines to retailers and wholesalers." Plaintiffs' characterization of these provisions is puzzling, because the language of the provisions

applicable to out-of-state wineries is identical. N.J.S.A. § 33:1-11(2a) authorizes an out-of-state winery with a limited wholesale license "to sell and distribute brewed malt alcoholic beverages and naturally fermented wines to retailers and wholesalers," and N.J.S.A. § 33:1-11(2b) authorizes an out-of-state winery with a wine wholesale license "to sell and distribute any naturally fermented, treated, blended, fortified and sparkling wines to retailers and wholesalers." N.J.S.A. § 33:1-11(2a) does allow out-of-state wineries to maintain a full-scale wholesaling business, but does not make operating as a wholesaler a prerequisite to exercising distribution rights.

"State policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent." Granholm, 544 U.S. at 489. Under the Pike standard, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). New Jersey's licensing scheme confers the same rights and privileges to in-state and out-of-state wineries to sell and distribute to retailers without the use of a wholesaler, while advancing the legitimate local public interest of preventing illegal activity, such as underage drinking or tax evasion. The Pike standard is met here, as these provisions regulate even-handedly and merely have the incidental effect on interstate commerce that any regulation touching interstate commerce does. And because the state has broad power under the Twenty-first Amendment to regulate the sale and distribution of liquor, even where the regulations affect interstate commerce, the provisions governing direct sales at the retail level do not offend the dormant commerce clause.

**4. Personal Transportation**

Plaintiffs argue that two features of N.J.S.A. § 33:1-2(a) violate the dormant commerce clause by discriminating against out-of-state wineries with respect to on-premises sales: the quantity limitation on transporting alcohol purchased from premises outside of the state and the language prohibiting consumers from transporting alcohol to New Jersey from a state which prohibits the transportation into that state of alcoholic beverages purchased or otherwise obtained in the State of New Jersey. (Pls.'s Br. Summ. J. 14-15.)

N.J.S.A. § 33:1-2(a) provides that "a person may, without limitation, purchase any amount of alcoholic beverages intended in good faith to be used solely for personal use and may personally transport those alcoholic beverages so purchased for personal use in any vehicle from a point within this State," while limiting purchases "from a point outside this State to the extent of, not exceeding 1/4 barrel or one case containing not in excess of 12 quarts in all, of beer, ale or porter, and one gallon of wine[1] and two quarts of other alcoholic beverages within any consecutive period of 24 hours." A consumer may purchase and personally transport more than the prescribed limits by paying a fee of $25 for a special permit limited by such conditions as the Director of the Division of Alcoholic Beverage Control may impose. Although this provision facially discriminates against out-of-state wineries by requiring a permit for out-of-state on-premises purchases and not in-state on-premises purchases, it survives plaintiffs' challenge.

"[A] State may validate a statute that discriminates against interstate commerce by showing that it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." New Energy Co. v. Limbach, 486 U.S. 269, 278 (1988) (internal citations omitted). Here, the $25 special permit serves as a registration mechanism, providing the state the authority to keep track of on-premises interstate sales for the purposes of taxation and, to a much lesser extent, to prevent illegal activity. New Jersey on-

---

[1] One bottle of wine is 750 ml or 1/5 of a gallon.

premises sales are already under the control of the state, and thus subject to direct taxation and regulation. Because out-of-state purchases escape this manner of regulation, the state must draw this distinction to advance its legitimate local purpose of collecting taxes on its citizens' purchases. The effect is to discriminate against out-of-state wineries, but the legitimate local purpose advanced by that discrimination, to tax out-of-state purchases, cannot be adequately served by reasonable nondiscriminatory alternatives.

The other provision of this section challenged by the plaintiffs, the reciprocity requirement for out-of-state purchases, also survives the dormant commerce clause inquiry. N.J.S.A. § 33:1-2(a) provides that "no person shall transport into this State or receive from without this State into this State, alcoholic beverages where the alcoholic beverages are transported or received from a state which prohibits the transportation into that state of alcoholic beverages purchased or otherwise obtained in the State of New Jersey." Defendants do not dispute that the plain language of the statute establishes a reciprocity requirement for out-of-state purchases. Instead they contend that the statute should survive as constituted because the state does not enforce this provision. (Def.'s Reply Br. 9.) "[I]n evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." Ward v. Rock against Racism, 491 U.S. 781, 795-96 (1989) (quoting Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, n. 5 (1982)). In his certification, Jerry Fischer, the Director of the New Jersey Division of Alcoholic Beverage Control, explained that the agency "does not interpret the N.J.S.A. 33:1-2 to restrict New Jersey residents from bringing home products originating only from a State that grants reciprocal rights to New Jersey purchases made by their own residents." (Fischer Certification ¶ 28.) He also attested to the fact that "[n]o prosecutions have been initiated against any New

Jersey resident with regard to personal transport of alcoholic beverages intended for personal consumption." (Fischer Certification ¶ 29.) The agency's narrowing construction of the provisions remedies its facial constitutional infirmity.

### 5. Direct Shipping to Consumers

Defendants contend that "New Jersey is one of the stops in a nationwide crusade by plaintiffs' attorneys to impose direct shipping of wine through litigation in states that have legitimately chosen to ban it through their legislative processes." (Def.'s Br. and Opp'n Summ. J. 21.) When plaintiffs brought this action, New Jersey's statutory scheme closely resembled the frameworks invalidated in Granholm, in that N.J.S.A. §§ 33:1-28.1 to 28.4 authorized direct shipping for in-state wineries with no corresponding out-of-state provision. But in anticipation of the New York and Michigan statutes being ruled unconstitutional by the Supreme Court in Granholm, the New Jersey legislature repealed those sections of the Act authorizing direct shipping by in-state wineries. See P.L. 2004, c. 102, § 2. The Assembly Law and Public Safety Committee Statement to the State of New Jersey Senate accompanying the bill repealing those provisions noted that "direct shipment will not be permitted" under the amended scheme, because direct sales "bypass the State's three-tier statutory distribution system, and deny consumers the protections provided by this system." (Attachment A to Fischer Decl.) This preemptive strike, although the plaintiffs vigorously argue to the contrary, moots this aspect of plaintiffs' case. The New Jersey statutory scheme no longer mandates preferential treatment with respect to direct sales -- it bans all direct sales, whether from an in-state winery or an out-of-state winery.

Under the Pike standard, a statute that regulates even-handedly to effectuate a legitimate local public interest will be upheld unless the burden imposed on interstate commerce is clearly

excessive in relation to the putative local benefits. "The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, 445 U.S. 97, 110 (1980). The Supreme Court explained in Branholm, 544 U.S. at 489, that:

> States have broad power to regulate liquor under § 2 of the Twenty-first Amendment. This power, however, does not allow States to ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers. If a State chooses to allow direct shipment of wine, it must do so on evenhanded terms.

New Jersey has chosen to exercise its broad power under the Twenty-first Amendment to disallow direct shipment of wine on evenhanded terms, citing its concerns that direct sales undermine the state's three-tier statutory distribution system. Defendants argue that New Jersey lawmakers have determined that the ban on direct shipping is necessary to ensure the efficacy of the licensing structure.

> Moreover, in a broader sense, a failure to uphold New Jersey's right to evenhandedly regulate the sale and shipment of alcohol by wineries to in-state consumers will allow the unregulated flow of alcohol. This lack of regulation can lead to illegal activity, including shipment to underage individuals, the sale of adulterated products, and the possibility of organized crime involvement in disguised internet schemes.

(Def.'s Br. and Opp'n Summ. J. 3.) Against the background of the expansive regulatory authority granted to the states by the Twenty-first Amendment when they enact statutes that regulate even-handedly, the legitimate local public interest cited by defendants is entitled to deference. Regulating alcohol to prevent illegal activity is a long-recognized public interest, and, without a showing of discriminatory treatment or effect, the burden imposed on interstate commerce does not overcome the putative local benefits.

Nonetheless, plaintiffs ignore the 2004 repeal of the statutes authorizing in-state direct shipping to consumers and persist in their assertion that New Jersey still discriminates against

17

out-of-state wineries by allowing in-state wineries to ship products directly to consumers. They argue that the defendants cite no legal authority for their position, and point to N.J.S.A. § 33:10-28 as the statute that currently authorizes in-state direct shipping, which provides:

> Licensees, except public warehouse licensees, may transport alcoholic beverages in their own vehicles, solely, however, for their own respective business in connection with and as defined in their respective licenses, without possessing a transportation license; provided, however, that such vehicles while so used shall be marked in the manner prescribed for all vehicles authorized to transport alcoholic beverages as shall be provided in rules and regulations.

But this section confers no more authority than that granted by the licensing sections, because of the limiting phrase "as defined in their respective licenses." Plaintiffs mischaracterize the plain language of N.J.S.A. § 33:10-28. Without any authority or evidence on this issue, their position is without merit.

### D. Remedy

When remedying a statutory scheme's constitutional infirmities, this Court looks to state law to determine whether to sever the offending language. Old Coach Dev. Corp. v. Tanzman, 881 F.2d 1227, 1234 (3d Cir. 1989) ("Issues of severability are generally issues of state law.") "Pursuant to N.J.S.A. 1:1-10, a court has the power to declare a portion of a statute unconstitutional, while leaving the remainder of the law intact. In appropriate cases, a court has the power to engage in 'judicial surgery,' or the narrow construction of a statute, to free it from constitutional doubt or defect." L. Feriozzi Concrete Co., Inc. v. Casino Reinvestment Development Authority, 342 N.J. Super. 237, 251 (App.Div. 2001) (internal quotation marks and citations omitted). N.J.S.A. 1:1-10 gives rise to a presumption of severability that may overcome only where the offending provisions are essential to the overall legislative plan. Inganamort v. Ft. Lee, 72 N.J. 412, 422 (1977). "The crucial inquiry is whether the legislature intended that the statute should stand or fall as a unitary whole. Legislative intent, in turn must be determined on

18

the basis of whether the objectionable feature of the statute can be excised without substantial impairment of the principal object of the statute." Old Coach Dev. Corp., 881 F.2d at 1234 (internal quotation marks and citations omitted).

Here, it is likely that the New Jersey legislature did not intend the New Jersey Alcoholic Beverage Control Act to stand or fall as a unitary whole. The principal object of the statute is to regulate the sale and distribution of alcoholic products in the state of New Jersey, and the offending provisions, the licensing fee schedule and the salesrooms provisions, can be excised without doing harm to the fundamental regulatory aims of N.J.S.A. § 33:1-1, *et seq*. These provisions undoubtedly impact discrete aspects of the winery licensing scheme but not to the extent that compromises the whole Act. The Court concludes that the provisions should be severed and hereby strikes the following language:

> 1. N.J.S.A. § 33:1-10(2a): The holder of this license shall also have the right to sell such wine at retail in original packages in six salesrooms apart from the winery premises for consumption on or off the premises and for sampling purposes for consumption on the premises, at a fee of $ 250 for each salesroom.
>
> 2. N.J.S.A. § 33:1-11(1): The fee for this license shall be $ 8,750.
>
> 3. N.J.S.A. § 33:1-11(2a): The fee for this license shall be $ 1,875.
>
> 4. N.J.S.A. § 33:1-11(2b): The fee for this license shall be $ 3,750.
>
> 5. N.J.S.A. § 33:1-11(2b): The fee for this license shall be $ 1,031.

Severing these provisions cures the features of the statutory scheme that violate the dormant commerce clause, while ensuring that New Jersey's three-tier regulatory system remains largely undisturbed.

## VI. CONCLUSION

As discussed by the foregoing, some of the features of the New Jersey's licensing scheme challenged by plaintiffs violate the dormant commerce clause, while others do not. They argue

that New Jersey's licensing structure violates the dormant commerce clause because only in-state wineries may: (1) sell wine directly to New Jersey consumers without involving a separate wholesaler; (2) open multiple salesrooms in the state; (3) sell wine directly to restaurants and other retailers without either using a wholesaler or becoming a wholesaler themselves; (4) sell more than a gallon of wine to consumers visiting the winery without the consumers having to obtain a permit; and (5) ship wine directly to consumers. The Court concludes that only the licensing fee schedule for out-of-state businesses outlined in N.J.S.A. §§ 33:1-11 and the salesroom provision found in N.J.S.A. § 33:1-10(2a) offend the dormant commerce clause. The rest of the statute survives plaintiffs' constitutional challenge.

    An appropriate order will be entered.


Dated: 6/30/08                                                  /s/ Katharine S. Hayden

                                                                          Katharine S. Hayden, U.S.D.J.